J. Randall Jones, Esq. (1927)
**KEMP, JONES & COULTHARD, LLP**
3800 Howard Hughes Pkwy, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Facsimile: (702) 385-6001
jrj@kempjones.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MARY FORSYTH, et al.,

Plaintiff,

vs

HUMANA, INC., et al.

Defendants.

Case No.: 2:89-cv-00249-DWH-LRL

**PLAINTIFFS' MOTION FOR ORDER APPROVING FINAL DISTRIBUTION OF SETTLEMENT FUND AS *CY PRES* AWARD AND ORDER THEREON**

**PLAINTIFF'S MOTION FOR ORDER APPROVING FINAL DISTRIBUTION OF SETTLEMENT FUND AS *CY PRES* AWARD**

Plaintiff, MARY FORSYTH, by and through counsel, J. Randall Jones, Esq., of Kemp, Jones & Coulthard, LLP, pursuant to FRCP 23(e), moves this Court for its Order approving a *cy pres* distribution of $31,680.47 in unclaimed funds remaining from settlement of this matter. As set forth below, Plaintiff is seeking to utilize the doctrine of *cy pres* in order to disburse the remaining unclaimed funds to the Legal Aid Center of Southern Nevada, Inc. (LACSN). This Motion is made pursuant to the Memorandum of Points and Authorities outlined below.

///

///

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND BACKGROUND

This class action challenged Defendants' practice of overcharging copayments for medical treatment and monopolization. Following litigation, the parties reached a settlement which was approved by the Court on December 2, 1999. The settlement agreement was complied with however, unclaimed funds still remain. The total settlement amount in this case was $28,800,000. Of that amount, $28,768,319.53 has been distributed to individual named and unnamed class members, attorney's fees and costs of suit. A post distribution balance of $31,680.47 remains in trust. The undistributed monies have been held in trust since November 4, 2002. Plaintiffs now request that the remaining funds from the trust account be distributed in an appropriate manner.

Because the remaining silent class members have not come forward and cannot be found Plaintiffs propose that the unclaimed funds from this consumer class action settlement be used to fund a *cy pres* award to the Legal Aid Center of Southern Nevada, Inc. (hereinafter "LACSN"). This memorandum will explain the *cy pres* doctrine generally and discuss why it is appropriate to distribute the unclaimed funds to LACSN.

## II. SUMMARY OF ARGUMENT

LACSN is an organization with a substantial record of community service and a dedicated Consumer Rights Project that assists low income clients in obtaining the types of remedies which are in accordance with the goals of this litigation and the remedy secured in this case. The LACSN Consumer Rights Project deals with the types of consumer protection issues at hand in this case, ensuring that the funds will be distributed in accordance with the goals of the remedy. Furthermore, the actions that gave rise to the claims made herein occurred in Las

Vegas, Nevada. The majority of class members live or lived in Las Vegas, Nevada. LACSN serves the population of southern Nevada, primarily Las Vegas. Therefore LACSN is not only an appropriate recipient based upon the substantive issues that it handles, but also due to its ability to provide services which will benefit the silent class members and its geographic location.

## III. STANDARD OF REVIEW

Federal courts frequently apply the *cy pres* doctrine in the settlement of class actions "where the proof of individual claims would be burdensome or distribution of damages costly." *Dennis v. Kellogg Co.*, 12 Cal. Daily Op. Serv. 7911, *4 (2012 WL 2870128). "Used in lieu of direct distribution of damages to silent class members, this alternative allows for 'aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class.'" *Id.* (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990)).

"To ensure that the settlement retains some connection to the plaintiff class and the underlying claims . . . a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to the class members." *Id.* (citing *Six Mexican Workers*, 904 F.2d at 1305). Courts require that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). "A *cy pres* award must be 'guided by (1) the objectives of the underlying statue(s) and (2) the interests of the silent class members' and must not benefit a group 'too remote from the plaintiff class.'" *Dennis*, 12 Cal. Daily Op. Serv. 7911, *4 (2012 WL 2870128) (citing *Nachshin*, 663 F.3d at 1039 and *Six Mexican Workers*, 904 F.2d at 1308).

///

///

## IV. ARGUMENT

### A. THE PURPOSE OF THE CONSUMER PROTECTION STATUTES UNDERLYING THIS LITIGATION ARE BEST SERVED BY DISTRIBUTION OF UNCLAIMED CLASS ACTION FUNDS UNDER THE *CY PRES* DOCTRINE.

Consumer protection laws are meant to ensure that the choices given to consumers in the marketplace are unimpaired by fraud or withholding of material information, and that the power differential between consumers and commercial enterprises is equalized. *See* Averitt & Lande, *Article: Consumer Sovereignty: A Unified Theory of Antitrust and Consumer Protection Law*, 65 Antitrust L.J. 713 (1997). They seek to improve the functioning of the marketplace by making it unprofitable to operate dishonestly. *Id.* Thus, when attempting to vindicate rights set forth in a consumer protection statute, like those at issue here, a court should focus on the policies of fundamental fairness in the marketplace, deterrence of fraud, and disgorgement of illegally obtained profits.

The class action method of litigation often has been used in order to fully effectuate the above objectives, as well as to compensate the injured parties. Class actions ensure the consumers will be protected even when many, if not most, injured parties will not participate actively in the court proceedings, either because they cannot be located, or because their injury is too small to make participation practicable. Fulfillment of these policy goals means that damage awards should not be confined to the claiming class members.

*Cy pres* distribution is appropriate in this case because it satisfies the deterrence and disgorgement goals of the consumer protection statutes underlying this case, and it benefits the absent class members and consumers as a whole.

///

///

**B. INFORMATION ABOUT LEGAL AID CENTER OF SOUTHERN NEVADA.**

Legal Aid Center of Southern Nevada is a private, non-profit 501 (c) (3) corporation dedicated to providing free community legal services to those in need. It fulfills its mission of providing access to justice by providing free, quality legal counsel, advice and representation for individuals who cannot afford an attorney in civil legal matters. It has been providing free legal aid for Clark County's low income residents since 1958. It handles a wide variety of consumer related matters including hospital collections, unfair debt collection, deceptive trade practices, payday loans, bankruptcy and foreclosure mediation. It also staffs the Civil Law Self Help Center at the Regional Justice Center under a contract with Clark County, which Center functions as a legal emergency room assisting individuals lost in the legal system with issues including *inter alia* debt collection, garnishment, landlord/tenant, and small claims.

Since the passage of AB 247, which revised Nevada's hospital collection statute (*See* NRS 449.757 – 759) LACSN has engaged in helping clients defend against inappropriate collection by hospitals. This type of work, along with LACSN's dedication to ensure that clients are not liable for provider errors in billing Medicaid or Medicare, its commitment to helping clients obtain Social Security benefits, and redressing consumer fraud in general means that LACSN endeavors to meet the needs of the low income community in Southern Nevada, including the silent members of this class and further the goals of this litigation.

**C. LEGAL AID CENTER OF SOUTHERN NEVADA IS THE MOST APPROPRIATE RECIPIENT FOR THE DISTRIBUTION OF *CY PRES* FUNDS IN THIS MATTER.**

As discussed above, LACSN is an organization with a substantial record of service and a dedicated Consumer Rights Project that assists clients in obtaining the types of remedies which are in accordance with the goals of the remedy in this case. Because LACSN has a dedicated

Consumer Rights Project in place, which deals with these types of consumer protection issues, funds will be distributed in accordance with the goals of the remedy, in compliance with *Six Mexican Workers*, 907 F.2d at 1308-1309. Furthermore, LACSN is geographically located in the same location as the majority of the class members herein and where the actions that gave rise to the claims occurred; therefore, unlike in *Nachshin*, LACSN is not only an appropriate recipient based upon the substantive issues that it handles, but also in its ability to benefit the absent class members with the various services it provides as well as its geographic location. These three factors will ensure that *cy pres* distribution of the remaining funds to LACSN will benefit the silent class members.

In this case, the underlying class claims were for Defendants' Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002, (hereinafter "ERISA") and Sherman Anti-Trust Act, 15 U.S.C. §§ 1, 2, violations, specifically, that Plaintiffs were overcharged co-payments for treatment at Sunrise Hospital, located in Las Vegas, Nevada, from 1985-88, and monopolization. The ERISA sets minimum standards for most voluntarily established pension and health plans in private industry to provide protection for individuals in these plans. The Sherman Anti-Trust Act prevents monopolization of business. LACSN's Consumer Rights Project represents southern Nevadans in cases which attempt to prevent unlawful and abusive business practices, such as those at issue in this case. Based on LACSN's dedication to remedying issues like those in this case, its ability to do so through its dedicated Consumer Rights Project, as well as its unique ability to serve the interests of the silent class members located in southern Nevada, LACSN is the most appropriate recipient of the *cy pres* distribution of funds.

///

///

## V. CONCLUSION

In light of cutbacks in funding for legal advocacy for the poor, the role of the *cy pres* remedy in consumer class actions has become important to non-profit legal services providers. *Cy pres* provides a court with an indispensable framework for serving the public interest of disgorgement and deterrence underlying this litigation and at the same time enhancing the fundamental fairness of the marketplace. *Levi Strauss*, 41 Cal.3d at 475; *Simer v. Rios*, 661 F.2d 655, 676 (7th Cir. 1981). Although the goal of deterrence can be achieved simply through a punitive damage award in some cases, the distribution of a fund to charitable or public service organizations serving consumers goes one step further by helping to prevent the same harms from being perpetrated on future, similarly situated consumers. The proposed *cy pres* recipient, Legal Aid Center of Southern Nevada, Inc., will provide a wide range of significant and long-term benefits to the plaintiff class. This organization will address issues related to those underlying this litigation as well as a myriad of other consumer issues, mostly those affecting the rights of low-income consumers.

Dated this 13th day of December, 2013.

Respectfully Submitted:

**KEMP, JONES & COULTHARD, LLP**

By: ______________________________

J. Randall Jones, Esq. (1927)
3800 Howard Hughes Pkwy, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Facsimile: (702) 385-6001
jrj@kempjones.com

**ORDER**

The Court having read Plaintiffs' Motion for Order Approving Final Distribution of Settlement Funds as *Cy Pres* Award (ECF No. 1289) filed on December 16, 2013, and good cause appearing, hereby **GRANTS** Plaintiffs' motion.

**IT IS HEREBY ORDERED** that the unclaimed funds remaining from settlement of this matter in the amount of $31,680.47 shall be distributed in accordance with the doctrine of *cy pres* and disbursed to the Legal Aid Center of Southern Nevada, Inc. (LACSN).

**DATED** this 31st day of January, 2014.

Gloria M. Navarro, Chief Judge
United States District Court